UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM W., : | |
|    *Plaintiff*, : | |
| v. : | No. 3:23-cv-1066 (SDV) |
| KILOLO KIJAKAZI, : | |
|    *Defendant*. : | |

## RULING ON PLAINTIFF'S MOTION TO REVERSE DECISION OF COMMISSIONER AND DEFENDANT'S MOTION TO AFFIRM

Plaintiff appeals from the administrative decision of the Commissioner of the Social Security Administration denying his application for a period of disability and disability insurance benefits. For the reasons below, plaintiff's Motion to Reverse the Decision of the Commissioner, ECF 14, is DENIED and the Commissioner's Motion to Affirm, ECF 19, is GRANTED.

### A. LEGAL STANDARDS

#### 1. Disability and eligibility

A claimant is disabled under the Social Security Act if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be eligible for Title II disability insurance benefits, the claimant must establish the onset of disability during the period in which he or she was insured based on quarters of qualifying work. 42 U.S.C. § 423; *see also Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989).

**2. Commissioner's five-step review**

The Commissioner of Social Security is authorized to make findings of fact and decide disability applications, *see* 42 U.S.C. § 405(b)(1), in accordance with the five-step sequential evaluation process provided in 20 C.F.R. § 404.1520.  (1) First, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity.  (2) If not, the Commissioner determines whether the claimant has a medically determinable impairment or combination of impairments that are "severe," meaning that it "significantly limits" the claimant's physical or mental ability to do basic work activities.  (3) If the claimant has a severe impairment or combination of impairments, the Commissioner evaluates whether, based solely on the medical evidence, the claimant has an impairment that "meets or equals" an impairment listed in Appendix 1, Subpart P, No. 4 of the regulations (the "Listings") and that either is expected to result in death or has lasted or will last for at least 12 months. [1]  If so, the claimant is disabled.  (4) If not, the Commissioner determines whether, despite the severe impairment, the claimant has the residual functional capacity ("RFC") to perform his or her past work. [2]  (5) If not, the Commissioner determines whether there is other work in the national economy which the claimant can perform in light of his or her RFC, age, education, and work experience.  *See* 20 C.F.R. § 404.1520.  The claimant bears the burden of proof on the first four steps, and the Commissioner bears the burden of proof on the final step.  *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

---

[1] *See* 20 C.F.R. § 404.1509 (durational requirement).

[2] Residual functional capacity is the most a claimant can do in a work setting despite his or her limitations.  20 C.F.R. § 404.1545.

The Commissioner's authority to make these findings and decisions is delegated to an administrative law judge ("ALJ"). *See* 20 C.F.R. § 404.929. A claimant may request review of an ALJ's decision by the Appeals Council. *See* 20 C.F.R. § 404.967. If the Appeals Council declines review or affirms the ALJ's decision, the claimant may appeal to the United States District Court. 42 U.S.C. § 405(g).

### 3. Court's review on appeal

A district court reviewing the Commissioner's final decision is performing an appellate function, *see Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981), and has the power to affirm, modify, or reverse the Commissioner's decision based on its review of the briefs and the administrative record. *See* 42 U.S.C. § 405(g). "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation marks omitted).

## B. BACKGROUND

### 1. Procedural History

In June 2019, plaintiff filed a Title II application for a period of disability and disability insurance benefits alleging an onset date of May 31, 2019. R. 220-21. The claim was denied after initial review and on reconsideration, and plaintiff requested a hearing. R. 105, 115, 140-41. On May 5, 2022, ALJ I.K. Harrington conducted a video hearing at which plaintiff and a vocational expert testified. R. 34-91. On May 26, 2022, the ALJ issued a written decision denying plaintiff's claims. R. 13-26. Plaintiff's request for review was denied by the Appeals Council, R. 1, and plaintiff filed this action on August 9, 2023.

**2. Work history**

Plaintiff, a military veteran, was 64 years old at the alleged disability onset date of May 31, 2019. His past relevant work includes submarine inspector, pipefitter, and plumbing instructor. R. 49-51. His date last insured was March 31, 2021. R. 115.

**3. Overview of mental impairments**

The Court assumes familiarity with the medical record and hearing testimony. Plaintiff's primary impairment is Alzheimer's disease. His cognitive decline was first noted in June 2017 when he sought treatment at the VA for anxiety relating to forgetfulness at work. R. 784-86. In July 2017, he was diagnosed with anxiety disorder by VA psychologist Dr. Joseph Amatruda. R. 771. In September 2017, he was diagnosed with mild cognitive impairment with suspicion of developing future dementia. R. 752. VA psychiatrist Dr. Marc Nespoli then diagnosed PTSD at a November 2017 appointment. R. 719-20. In January 2020, plaintiff's anxiety and PTSD were noted to be well controlled on Lexapro. R. 1250. In July 2020, he was formally diagnosed with early onset Alzheimer's disease and started donepezil medication to slow the cognitive decline. R. 1201-08. He unilaterally discontinued donepezil in October 2020, R. 1162, 1171, but then requested to resume it in October 2021, R. 1108-09, a few months after his March 31, 2021 date last insured. The last treatment prior to his date last insured was a March 2, 2021 telephonic visit with VA psychiatrist Dr. Silpa Balachandran, at which plaintiff reported the following:

> Sometimes forgets where he is going and that makes him a little anxious. Keeps active by helping son's business. Does weights. Does a lot of household chores- cooking/cleaning. Sleep and appetite are good. . . . Denies experiencing any nightmares/flashbacks. Last time he had [PTSD] symptoms was 6 months back. Compliant with lexapro. . . .
> States that his memory is the same. Difficulty with short term memory. Occasionally forgets what he needs to buy at stores. He makes a list now before he goes shopping and this has been helpful. He cut down on his driving due to pandemic and because his son drives him around when they go out to work. States that his family is not concerned about him driving locally, but he has not

> had an opportunity to go anywhere by himself, so he is not sure if there's a decline there.  States that focus factor (memory pill has helped).  He knows all his meds and is compliant with it.  Occasionally wife has to remind him to take his pills.  Denies any wandering/getting lost/falls/accidents.  Denies SI/HI/AH/VH.  Feels safe at home.

R. 1138.  In her assessment, Dr. Balachandran noted: "his mood symptoms continue to be stable on Lexapro, with no changes in memory or functionality.  Denies [symptoms] of GAD and PTSD.  Pt has insight into short term memory loss and is coping well, by making lists/reminders, keeping physically active. . . .  No safety concerns at this time. We will continue to monitor his mood symptoms and cognition."  R. 1143.

### 4.  Overview of physical impairments

Plaintiff's medical history also includes treatment for hearing loss, left knee osteoarthritis, hypertension, sleep apnea, malignant melanoma, thumb injury, and prostate cancer in remission.  Only the knee impairment is relevant to this appeal.  Plaintiff partially tore his left ACL in February 2009.  R. 888.  He still had a mild limp as of February 2010.  R. 886.  He complained of left knee pain in March 2014 but his orthopedist found no ligamentous or significant meniscal pathology and recommended home exercise.  R. 885.  Six years later in November 2020, he complained of left knee pain after stepping in a hole while working with his son's landscaping business, and his orthopedist assessed low grade osteoarthritis.  R. 882.  Plaintiff did not want to pursue an injection for pain control.  *Id.*  In September 2021, months after his March 2021 date last insured, he apparently stepped in a hole again, aggravating his right knee this time, but showed normal ambulation, stated that he was "getting better already," and declined a PT referral and an x-ray.  R. 993, 1006, 1010.  In November 2021, his orthopedist noted mild bilateral knee osteoarthritis based on a left knee x-ray in November 2020 and a right knee x-ray in November 2021.  R. 1279.  His right knee was drained followed by a steroid injection.  *Id.*  He was

instructed to resume activity as tolerated, and he mentioned that he was still helping his son out in his landscaping business.  *Id.*

### 5. The ALJ's decision

In her May 2022 Decision, the ALJ found that plaintiff had the following severe mental impairments: anxiety disorder, Alzheimer's disease, and PTSD.  R. 16.  The ALJ also found that plaintiff had the following non-severe physical impairments: hearing loss, osteoarthritis bilateral knees, hypertension, obstructive sleep apnea, malignant melanoma, avulsion injury distal tip left thumb, and prostate cancer (in remission).  R. 16-17.  After finding that plaintiff's impairments did not meet or medically equal a listed impairment, R. 17-19, she then determined that plaintiff had the residual capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> The claimant is able to understand, retain, and carry out simple instructions at 2-3 steps. He is further capable of making simple work-related decisions and adapt to routine workplace changes, and able to perform self-paced work with no strict adherence to time or production requirements.

R. 19-23.  At Step 4, the ALJ found that the plaintiff was not capable of performing past relevant work but concluded at Step 5 based on vocational expert testimony that there were jobs that plaintiff could perform.  R. 23-25.  The ALJ therefore concluded that plaintiff was not disabled under the Social Security regulations.

### C. DISCUSSION

Plaintiff raises four claims of error on this appeal: (i) the ALJ failed to properly evaluate the impacts of plaintiff's knee impairment on his RFC; (ii) the ALJ's paragraph B analysis was inconsistent with her RFC determination; (iii) the hearing testimony demonstrated that plaintiff could not adapt to a new job; and (iv) the VE's testimony was unreliable because she cited a

"marker" job that required more than three-step instructions.  For the reasons below, the Court finds no legal or factual error.

### 1. Discussion of knee impairment

Plaintiff's first claim of error is that the ALJ failed to explain his reasoning regarding plaintiff's knee impairment with sufficient specificity to permit meaningful appellate review. ECF 14-1 at 6-8.  As evidence of the functional impacts of his knee impairment, plaintiff points to his orthopedist's observations that he had a mild limp between February 2009 and February 2010 due to a partial left ACL tear, and had a mild limp again in March 2014, R. 885-91, and also points to his own report at a November 2020 orthopedic visit that, after stepping in a hole a few weeks prior, he had some difficulties with prolonged standing and using ladders, R. 882.  It is well established that although the ALJ need not reconcile every factual conflict, the law does require "that the crucial factors in any determination . . . be set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  Here, the ALJ discussed plaintiff's closest orthopedic visits before (November 2020, R. 882) and after (November 2021, R. 1279) his March 2021 date last insured, acknowledging his reports of discomfort and clinical findings of mild degenerative changes but noting that the orthopedist recommended that he resume activities as tolerated. R. 17.  Notably, as of November 2021, these activities still included helping his son with his landscaping business. R. 1279.  The ALJ also cited testimony from May 2022 indicating that plaintiff remained physically able to work out, mow the lawn, and engage in activities of daily living without physical limitations. R. 17.  This discussion was sufficient to permit this Court to meaningfully review the ALJ's RFC determination that, as of March 2021, plaintiff could still perform a full range of work at all exertional levels.  *See*

*Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) ("An ALJ need not recite every piece of evidence that contributed to the decision, so long as the record 'permits us to glean the rationale of an ALJ's decision.'") (citation omitted). Consequently, the claim of legal error is unfounded.

To the extent that plaintiff is also alleging factual error in the RFC determination, there is substantial evidence in the record to support the ALJ's determination. Although there are records from February and March 2022 indicating that plaintiff's right knee degeneration had increased from mild to moderate, that he had a meniscus tear, and walked with a mild limp, R. 1277-78, these were almost a year after his date last insured. Meanwhile, at a March 1, 2021 telephone follow-up with the VA PCP, plaintiff's wife reported that he had seen an outside orthopedist after twisting his left knee in September 2022 and was doing well with no continued pain, and no current concerns. R. 1146. Plaintiff then reported in a September 2021 VA PCP visit that he had stepped in a hole again, injuring his right knee this time, but was ambulating normally, was "getting better already," and declined a PT referral. R. 1006, 1010. Consequently, although the 2022 evidence suggests that plaintiff's knee continued to worsen, the ALJ's conclusion that plaintiff's knee impairments did not produce any exertional RFC limitations is supported by substantial evidence, regardless of plaintiff's assertion that it also could have supported a finding of greater functional limitation. *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are supported by substantial evidence.").

### 2. Consistency of paragraph B analysis with RFC determination

Plaintiff next argues that the ALJ's analysis of the paragraph B criteria was inconsistent with her subsequent RFC determination. ECF 14-1 at 8-9. To evaluate at Step 3 whether

plaintiff met the criteria of mental disorder listings 12.02 (neurocognitive disorders), 12.06 (anxiety disorder), and 12.15 (trauma and stressor-related disorders), the ALJ found, *inter alia*, that plaintiff had a "moderate" limitation in three of the paragraph B criteria: understanding, remembering, and applying information; concentrating, persisting and maintaining pace; and adapting and managing oneself.  Given the absence of two "marked" limitations or one "extreme" limitation, the ALJ found that plaintiff did not meet the listings criteria.  R. 17-18.

Plaintiff contends that this finding of moderate limitations is incompatible with the ALJ's subsequent RFC determination that plaintiff remained able to understand, retain, and carry out simple instructions at 2-3 steps; could make simple work-related decisions and adapt to routine workplace changes; and could perform self-paced work with no strict adherence to time or production requirements.  R. 19.  However, the argument is simply incorrect: district courts regularly conclude that moderate mental limitations may be accounted for by limiting the RFC to simple, routine tasks that do not require production or pace quotas.  *See*, *e.g.*, *Crystal M.H. v. Comm'r of Soc. Sec.*, No. 1:23-cv-3142 (GRJ), 2024 WL 1962313, at *6 (S.D.N.Y. May 3, 2024) (ALJ appropriately accounted for mild to moderate impairment in mental functioning by incorporating significant non-exertional limitations into the RFC) (collecting examples); *Thomas A. v. Comm'r of Soc. Sec.*, No. 23-cv-0353 (LJV), 2024 WL 1014050, at *4 (W.D.N.Y. Mar. 8, 2024) (limitation to routine and repetitive tasks and work that was low stress with only occasional decision making and changes and no production or pace work is consistent with moderate limitation in understanding, remembering, and applying simple and complex directions and instructions) (collecting examples); *Stonick v. Saul*, No. 3:19-cv-1334 (TOF), 2020 WL 6129339, at *13 (D. Conn. Oct. 19, 2020) ("By limiting the Plaintiff to simple, routine tasks that did not require teamwork or working closely with the public, the ALJ properly accounted for

moderate limitations in attention, concentration, and pace and mild limitations in adapting or managing oneself.") (collecting examples).  The claim of error is therefore unfounded.

### 3. Ability to adapt to a new job

Plaintiff next appears to claim that his memory issues would prevent him from adapting to a new job, as follows:

> The ALJ credited that the tasks performed were routine did not make a finding on Plaintiff's ability to adapt and become better based on the evidence in the record. However, the residual functioning capacity analysis did not evaluate the ability of learning new skills and the new tasks as indicated by the testimony presented during the hearing.

ECF 14-1 at 8.  At the May 2022 hearing, plaintiff's wife testified that she sends him on the same errands every day to keep them fresh in his memory, because "anything that he does every single day seven days a week is still slightly familiar to him."  R. 64.  Standing alone, this witness testimony does not conclusively establish that plaintiff lacked the RFC as of his March 2021 date last insured to "carry out simple instructions at 2-3 steps," "mak[e] simple work-related decisions and adapt to routine workplace changes," or "perform self-paced work" with no production quota per the ALJ's RFC determination.  R. 19.

Moreover, the testimony is just one piece of evidence and is dated more than a year after the date last insured.  There is other evidence indicating that plaintiff could perform simple, routine tasks as of his March 2021 date last insured, including his wife's March 1, 2021 report that he had retired one month prior and was now working with his son's lawn business, R. 1145, and his March 2, 2021 report that he helped with his son's landscaping business, did a lot of household chores including cooking and cleaning, went shopping, and was still driving.  R. 1138. The VA psychiatrist concluded based on the March 2 visit that plaintiff had "insight into short term memory loss and is coping well, by making lists/reminders, keeping physically active," and

she encouraged him to engage in "cognitively stimulating activities like cross word puzzles/sudoku." R. 1143. Over time, the record does suggest that plaintiff's short-term memory loss had worsened by late 2021. R. 1108 (October 2021: "Regarding cognition, he is having progressive short-term memory loss consistent with course of alzheimer's dementia. No major changes in functioning, needs assistnace with most iADLs and independent of ADLs."); R 1312 (November 2021: "Veteran currently requiring prompting/assist with IADLS: making lists, reminders where to place things while cleaning. Veteran locally driving, family has limited driving long distances."). But given the existence of substantial evidence to support the ALJ's RFC determination as of the March 2021 date last insured, the claim of error is unavailing.

   **4. Marker job cited by VE**

Plaintiff's final argument appears to be the VE's testimony was unreliable because she cited a "marker" job that, according to plaintiff's brief, requires more than the three-step-instruction limitation included in the RFC determination. Specifically, the brief asserts:

> Furthermore, during the cross-examination of the vocational expert, Plaintiff's counsel clearly established that the job of marker required greater than two or three steps through the testimony of the vocational expert. Tr. 84-87. The jobs required judgments to be made, making distinctions between labels, remembering what went where, applying labels to the steps, etc. Tr. 84-87.

ECF 14-1 at 9. At the hearing, plaintiff's counsel elicited testimony that the marker job might require making judgments as to which label should go on which item, which plaintiff now argues is more than he can handle due to his neurocognitive impairment. However, in response to the ALJ's follow-up questions, the VE confirmed the marker job is a "very simple and routine" position with only a "reasoning level 2" that fits within the ALJ's RFC determination. R. 85-86. This inquiry and clarification was sufficient to satisfy the ALJ's duty to identify and resolve the putative conflict, and the ALJ reasonably relied on the VE's opinion. *Cf. Lockwood v. Comm'r*

*of Soc. Sec. Admin.*, 914 F.3d 87, 93 (2d Cir. 2019) (ALJ has affirmative duty to identify and resolve apparent conflicts in VE testimony, which requires more than merely asking VE a catch-all question about whether any conflict exists); *see also McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014) ("ALJ reasonably credited [VE] testimony, which was given on the basis of the expert's professional experience and clinical judgment, and which was not undermined by any evidence in the record"). Moreover, even assuming that the marker job is inconsistent with the ALJ's RFC determination, the VE cited two other positions (floor waxer and counter supply worker) that fit the RFC description, and only one such job is required at Step 5. *See Bavaro v. Astrue*, 413 F. App'x 382, 384 (2d Cir. 2011) ("The Commissioner need show only one job existing in the national economy that [the claimant] can perform.") (citing 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1566(b)). Consequently, there is no reversible error.

### D.  CONCLUSION

For the foregoing reasons, plaintiff's Motion to Reverse the Decision of the Commissioner, ECF 14, is DENIED and the Commissioner's Motion to Affirm, ECF 19, is GRANTED.

This is not a recommended ruling. The consent of the parties allows a magistrate judge to direct the entry of a judgment of the District Court in accordance with the Federal Rules of Civil Procedure. Appeals from this judgment can be made directly to the appropriate United States court of appeals. *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c).

SO ORDERED, this 15th day of August, 2024, at Bridgeport, Connecticut.

*/s/ S. Dave Vatti*
S. DAVE VATTI
United States Magistrate Judge